In re William Eugene
PRETTYMAN, Debtor.

Everett REED, Personal Representative
Of The Estate of Marsha Peck,
Deceased, Plaintiff,

v.

William Eugene
PRETTYMAN, Defendant.

Bankruptcy No. 90–40270–2.
Adv. No. 90–4062–2.

United States Bankruptcy Court,
W.D. Missouri.

Aug. 6, 1990.

Teresa M. Terry, Liberty, Mo., for debtor/defendant.

Joseph B. Polette, Kansas City, Mo., for plaintiff.

## MEMORANDUM OPINION

FRANK W. KOGER, Chief Judge.

Debtor herein filed a petition for relief under Chapter 7. The only substantial debt listed by debtor was an unsecured obligation shown as due to his ex-father-in-law, Everett Reed as the Personal Representative of Marsha Peck. Debtor and Marsha Peck, then Marsha Prettyman, were divorced on April 13, 1973. Marsha Peck was awarded custody of the three minor children and debtor was ordered to pay $15.00 per week per child for child support. It would appear that he did not pay same (or at least only a small part of same) because on May 26, 1988, the Circuit Court of Jackson County ruled that he was delinquent $22,275.08 and entered judgment against him for such amount. In addition the State of Oklahoma has a claim

for $5,765.00 for AFDC paid to Marsha Peck. The State of Missouri has a claim for $2,078.00 for AFDC paid to Marsha Peck. In fact, debtor lists $36,152.90 in unsecured debts and $27,770.05 of said sum is owed for accrued child support and AFDC obligations. Debtor states that he has not filed tax returns for 1987, 1988 or 1989. His stated reason (as set out in his Statement of Affairs) for said failure is: "even if I filed, it would be attached to pay back AFDC in Oklahoma collected by my ex-wife".

In any event, Marsha Peck was garnishing his wages regularly until her death on June 10, 1989. On June 21, 1989, her father Everett Reed, hereinafter plaintiff, was appointed personal representative of the estate of Marsha Peck. On August 2, 1989, the Jackson County Circuit Court substituted plaintiff as the party petitioner in the divorce case. On August 25, 1989, plaintiff issued an execution under the judgment for child support and a garnishment in aid of execution was served on debtor's employer. Collection activity continued until February 1, 1990, when debtor filed his petition for relief, listing the debt to the plaintiff as personal representative and also listing the State of Oklahoma for AFDC contributions and the State of Missouri for AFDC contributions. The State of Missouri and the State of Oklahoma have not filed any adversary actions to avoid potential discharge of the obligations respectively due to them. Only plaintiff seeks to determine the dischargeability, vel non, of the past due child support.

Unlike most 11 U.S.C. § 523(a)(5) actions, the parties do not dispute the basis for which the judgment amount was awarded. Instead they present differing views as to the effect of § 523(a)(5)(A) or what might be termed the anti-alienability of an award of alimony, maintenance or support therein contained. Debtor asserts two defenses to the alleged non-dischargeability: (1) that plaintiff has assigned ⅓ of said judgment to the attorney collecting same, and (2) that the death of Marsha Peck and the subsequent appointment of plaintiff as personal representative of her estate and substitution as party petitioner in the divorce pro-

ceeding, created an assignment by operation of law of the child support debt. The Court readily confesses that this is only the second time it has had to consider the effect of the anti-alienability clause. In the event that others are in a similar position, the section (in pertinent part) reads as follows:

11 U.S.C. § 523

(a) A discharge under Section 727 ... of this title ... does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child ... but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by. operation of law, or otherwise ...

■ Plaintiff's position is that there has been no assignment of the child support judgment by the employment of counsel for plaintiff on a ⅓ contingent basis. Plaintiff seeks to take the position that child support is child support and who collects it (as long as it is for the benefit of the children) is unimportant insofar as debtor's second assertion is concerned. The Court believes that debtor's first point is easily determined. The employment of an attorney upon a contingent basis has long recognition in the American system of jurisprudence. It is one of the distinctions that display a difference between ours and the English system of jurisprudence. It has been the theory, underlying the contingent fee system, that such payment arrangements permit a greater number of parties to assert their legal rights. Such arrangements are particularly in use in tort cases. The right to sue in tort is nonassignable, but contingent fee representation is the usual rule. Debtor's first point is ruled against him.

■ Debtor's second point does not lend itself to such an easy answer. Plaintiff has cited two cases; the debtor has cited three; none seem to be responsive to the question. The Court's own research has not turned up a case where the custodial parent has died and the representative of

that parent's estate has sought to determine if the unpaid child support is dischargeable, vel non. The question hinges on whether the death of the custodial parent and appointment of a representative creates an assignment, by operation of law, which in turn defeats the usual nondischargeability of child support. The Bankruptcy Reform Act of 1978, 11 U.S.C. § 101 et seq. is of little assistance in either defining the term assignment by operation of law or providing any historical or other data as to the application of § 523(a)(5)(A) to the present problem. It, therefore, becomes necessary to consider Missouri law to determine what effect the death of Marsha Peck and the appointment and substitution of Everett Reed has upon the accrued child support.

Both statutory law and case law from the State of Missouri lead the Court to conclude that there has been no assignment of the past due child support and that Everett Reed cannot enforce any collection of any sums in his present posture. The statutory portion of the law leading to this conclusion is found in R.S.Mo. § 452.340(1) and reads as follows:

"In a proceeding for dissolution of marriage, legal separation or child support, the court may order either or both parents owing a duty of support to a child of the marriage to pay an amount reasonable or necessary for his support, including an award retroactive to the date of filing the petition, without regard to marital misconduct, after considering all relevant factors ..."

It seems to the Court that the magic words "owing a duty of support to a child of the marriage" indicate that the order of child support, while payable to the custodial parent, is actually the property of the child. For examples of the case law leading to the same conclusion see *Block v. Lieberman,* (Mo.App.1974) 506 S.W.2d 485. Therein the St. Louis Court of Appeals said two things of importance to the instant case. First it opined: "The award of child support, although made to the mother, is for the benefit of the children, ..." and second, "The other parent has no direct pecuniary interest in such ...", l.c. 486. Also, see *Martin v. Martin,* (Mo.App.1976) 539 S.W.2d 756 wherein the Kansas City Court of Appeals cited *Block* with approval.

■ It seems clear then that the accrued and unpaid child support was not the property of Marsha Peck at the time of her death. If so, then it follows that it is not the property of her estate, since her estate cannot claim any interest which she never owned. In steady sequence then plaintiff, in his status as personal representative of Marsha Peck's estate, is not the proper party to enforce the judgment. Annette and Ronnette Prettyman will be 20 years old on September 10, 1990. They are adults under Missouri law. One-third of the May 26, 1988 judgment for unpaid child support belongs to each of them. Bryan Prettyman will be 18 in December of this year. Until such time as he reaches his majority, his guardian is the appropriate party to enforce his portion of the judgment for child support. Once he reaches his majority, he too may enforce his portion of the judgment on a personal basis. Since the back child support did not belong to Marsha Peck, neither her death, nor the opening of an estate for her, nor the substitution of Everett Reed as party petitioner in the divorce proceeding operated as an assignment by law of the unpaid child support. Thus, the child support judgment is NOT DISCHARGED by this bankruptcy proceeding but Marsha Peck's personal representative has no interest therein, and any substitute party in the divorce proceeding has no interest, unless said party is the representative of the children or at least one of them.

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required by Rule 7052, Rules of Bankruptcy.

SO ORDERED.